I'm sure most of you all know everything about what needs to be done, but I'll just give you a really short little reminder that when you come up and you speak, you will have this item going down. When it gets to yellow, you have two minutes. When it gets to red, you're done and you need to stop, unless we're asking questions. If we're asking questions, you have to stay and answer. Now, also know that you are not required to talk the whole time. If you're done, if you had 20 minutes and you're done after 17 minutes, you're free to stop. So you're not required to talk the whole time, but you're allowed to. And again, you've got to stay if we're asking questions. And remember to speak loud enough that we can hear you, and not so fast that it's really hard for us to take down anything you say. Okay. So with that, we will start with the first one, which is case number 25-50714. And we have the Garette Gray for Ronnie Taylor. I probably didn't pronounce your name right, but you can come pronounce it. Oh, Garette? Garette Gray? Yes, ma'am. Ah, okay. Good. Good morning, and may it please the Court. I'd like to address 3.6. First, under Texas law, there was no ministerial duty placed on Taylor to send Rivera-Castellon's appointment paperwork to the appointment authority within 24 hours of his arrest and magistration. Absent that ministerial duty, Taylor was necessarily acting with discretion, which gets him into the qualified immunity framework. Second, under that framework, there was no right to counsel violation. And third, even if there was, there was no clearly established law at any level of particularity, much less that needed to strip Taylor of his immunity from suit. Now, I'd like to start by focusing on the first point, which is the absence of a ministerial duty placed on Taylor. At the crux of Rivera-Castellon's complaint on page 550 of the Record on Appeal is that there was a duty under state law imposed on Taylor. That is a legal conclusion not entitled to deference from this Court, and it's one that's contradicted by the text of Article 15.17A of the Texas Code of Criminal Procedure, which places the duty to transmit appointment of counsel paperwork on the magistrate judge. And that section of the Code of Criminal Procedure is specifically titled, Duties of Arresting Officer and Magistrate. Now, Rivera-Castellon's argument seems to be that there was a written agreement underlying the managed assigned counsel program here, which placed that ministerial duty on Taylor. I'm taking that argument from page 26 of my friend's brief. Now, the problem with that argument is if you first start by looking at Rivera-Castellon's complaint, you will not see any allegation of there being a written agreement, much less a written agreement to which Taylor was a party or Taylor's employer, the Texas Division of Emergency Management, was a party. Now, the next problem is if you look at the text of Article 26.047 of the Code of Criminal Procedure, which governs managed assigned counsel programs, you'll see the type of written agreement that is contemplated in the text. And it is a written agreement specifically between a county or a county's commissioner's court, and then a nonprofit bar association or another government entity, which serves as the appointment authority. Now here, because of Operation Lone Star and the Texas Supreme Court's emergency order, which you can find on pages 582 through, excuse me, 582 through 89 of the record, the Texas Indigent Defense Commission was allowed to step into the shoes. Okay. What do you think is your very best case in support of your claim of qualified immunity for Taylor? I think the very best case in terms of within the qualified immunity framework would probably be, I would start with Rothgary, in which there was a six-month delay in the appointment of counsel for the defendant there. And the Supreme Court declined to say whether that was unreasonable or to even opine upon the standard that would apply in making that determination. Now here, with Mr. Rivera-Castellon, we have about a 76-day delay in appointing appointment of counsel. And so we don't even get anywhere near the threshold in Rothgary, which the United States Supreme Court declined to say whether that would be unreasonable. I think another case that's helpful to look at would be Wagenfeld v. Guzman from this court. It's cited in both our opening brief and our reply brief. In that case, you have a right to counsel claim brought by defendants who were not allowed to contact their counsel via cell phones in the aftermath of Hurricane Katrina while landlines were down. And this court went straight to the clearly established wrong and held that there was no clearly established law putting an official on notice that they would have to allow detainees to contact their counsel with cell phones. But it also took into account the unprecedented logistical concerns that were going on in the aftermath of Katrina, where you had landlines down, power outages, all sorts of things that officials were having to deal with on the fly. I think that's particularly relevant here when you're looking at Operation Lone Star and how the counties down on the border were overwhelmed with the amount of people entering the country. I mean, you can look to pages 522 through 524 of the Record on Appeal, which you have local and state disaster declarations that were put into place. You have Record on Appeal page 528, in which you have the Kinney County prosecutions going from approximately ten or so a month to about five to six hundred a month. And so that was the context in which Taylor was hired by the Texas Division of Emergency Management to help get the processing facility up and running. And in that role as the facility administrator of the processing facility, he was necessarily acting with discretion. And you don't have to just take my word for it. If you look to the complaint of Rivera-Castellon, you'll see you have on page 520 the allegation that Taylor was hired to help design, administer, and operate the Val Verde Processing Center. You have on page 521 that his responsibilities included formulating, implementing, and executing policies, customs, and practices applicable to the center. Things that are inherently discretionary that would have required Taylor to be using discretion and which should get him into the Qualified Immunity Framework. Well how do Texas state law immunity cases, do you think, how does that play into our federal discretionary duty analysis? So they work together. Typically this court has gone to look at state law to determine whether an official was acting with discretionary authority. That's consistent in the cases cited by both in our brief as well as my friend's brief such as Cherry, Noll, Sweeten, Diaz. In all of those cases, the court started by going to look at state law. And state law here, the duty that Rivera-Castellon alleges was violated is placed specifically on the magistrate judge under Article 15.17A, not on someone in Taylor's position. And what I've seen in the briefing, there's not any cases cited that support their sort of delegation theory that would allow the Texas Indigent Defense Commission and the Lubbock Private Defender's Office to enter into a written agreement together in which they can just wholesale reassign statutory duties placed on the magistrate judge to Taylor, whose employer would not have been a party to that agreement anyway. And so ultimately when you're just left with, when you set aside the legal conclusion in the complaint that Taylor had a duty under state law, just look to the factual allegations. The factual allegations clearly demonstrate that Taylor was acting with discretion. And that should get him into the Qualified Immunity Framework. Now in the Qualified Immunity Framework, we think the easiest way for this court to resolve that is to go straight to the clearly established prong. And that is because there isn't any authority within this circuit or from the Supreme Court of the United States holding that just the silent passage of a statutory deadline, which would entitle someone to seek reduced bail, violates the right to counsel. If you look at the right to counsel cases that are cited in our briefs, such as Wade, Ash, Portillo, you see that those are all cases in which there's actual, when there's a discussion with the Sixth Amendment, right to counsel protects, it protects you from that sort of adversarial proceeding with the state or with the government. Not simply being held and detained while a deadline passes. And so that's a critical distinction here is that Rivera-Castellan never had to face the state or his, the state in any sort of adversarial proceeding at all without the absence of counsel, with the absence of counsel. And so we think clearly established prong is the easiest way to resolve this. But again, under the Sixth Amendment as well, you simply don't have the traditional Sixth Amendment violation here in which someone is placed in front of the state with the absence of counsel. So I'd also like to point out in looking at the cases cited by my friend on the other side with, under the clearly established prong, that those cases do not specifically hold what Rivera-Castellan needs them to hold. If you look at Hegazy v. Templeton, which they cite from the Second Circuit, that's actually a Fifth Amendment case discussing the privilege against self-incrimination, in which the Second Circuit just says that a bail hearing is a part of that sort of criminal case or process for Fifth Amendment purposes. You also have Ditch v. Grace from the Third Circuit, which does not discuss bail hearings. And you also have Smith v. Lockhart from the Eighth Circuit. And in that case, you have a sort of kind of omnibus hearing in which various sorts of motions are being considered in front of the judge in which the plaintiff, the defendant did not have counsel present. All that to say, that's not what happened here. Rivera-Castellan was arrested. He was brought in front of a magistrate judge, and he waited about 76 days ultimately to have counsel appointed. But during that time, he was never put in the adversarial process in which he could have been prejudiced in any way looking towards trial. And so under the Qualified Immunity Framework, there is no clearly established law, nor is there a Sixth Amendment violation. If the Court has no further questions, I'll save the rest of my time for rebuttal. Okay. Thank you. We appreciate it. We'll now hear from the appellee, David Donati, on behalf of the appellee. Good morning, Your Honors, and may it please the Court, David Donati for Plaintiff Appellee Moctezuma Rivera-Castellan. The right to a lawyer is a core protection of the American criminal justice system. Once that right attaches, the accused needs to get a lawyer working to advise as to whether to invoke critical stages, to fight whether a trial will occur, or to be ready when trial comes. Mr. Castellan was arrested under Operation Lone Star and bused to the Val Verde Processing Center, a central magistration facility built under contract by Defendant Ronnie Taylor, to process OLS arrests specifically. Arrestees were booked, appeared before a magistrate by Zoom at the facility, and then transported to state prisons to await the disposition of their cases. The VVPC was supposed to transmit appointment paperwork to the Lubbock Private Defender's Office. For Mr. Rivera, it never did. For 76 days, Mr. Rivera suffered at Briscoe Prison, waiting in the dark without the guiding hand of counsel. He had no one to tell him that after 30 days of incarceration, the law already required his release. Within five days of receiving counsel, he was free. The case was dismissed. He was never charged with a crime. This case should end at the threshold. Taylor concedes that the duty to transmit appointment paperwork is ministerial, and without discretionary authority, you do not even get into the Qualified Community Framework. His only escape is to argue that the duty was not his. But in order to do that on a 12b6, he has to contradict several factual allegations in the complaint, and his briefing and his presentation here is notably silent on those allegations. Mr. Taylor signed the OLS agreements. He stood up the Valverni Processing Center, which was an Office of Court Administration magistration facility. Individuals were interviewed and magistrated on site at the VVPC, where they signed the documents necessary to demonstrate their entitlement to appointed counsel. Mr. Taylor never contradicts the fact alleged that when the defense organization needed appointment counsel paperwork because they appreciated that it was missing, they contacted him. They contacted the Valverni Processing Center, not the magistrates. And when Mr. Taylor received those entreaties, he either acted on them or he redirected them. And when he redirected them, he did not redirect them to a magistrate. He redirected them to his successor, the chief jailer at the Valverni Processing Center. Mr. Taylor's only argument is that a statutory interpretation makes it implausible that the duty was delegated to him. That's the only way that he rebuts the factual allegations in the complaint. Well, you say the only way, but that sounds like a pretty good way. Why isn't that a good way to rebut? It would be a good way, Your Honor, if two things were true. The first is his statutory interpretation has to be very clear that, in fact, the duty was not his. So the statutory arguments are not all as clear as Mr. Taylor makes them out to be. And the district court, I think, very persuasively runs through both of the statutory bases. 1517A not only delegates duty to the magistrate, but it says the magistrate can cause transmission. And Article 26 of the Code of Criminal Procedure creates the framework by which managed assigned counsel programs, which were indisputably in effect in Operation Lone Star, can execute agreements for their administration. But I think another key point is that there's a physical reality here, which is that magistrate judges are being zoomed onto the premises of the Valverni Processing Center where individuals are being magistrated. Their paperwork is being generated at the Valverni Processing Center. The magistrates who are across the state appearing via video conference don't have those papers. Those papers need to leave the Valverni Processing Center somehow. And that somehow is the Valverni Processing Center needs to send them. If Mr. Taylor's argument is that this entire system is unconstitutional, I think there are two problems with it. The first is that we allege in our complaint, this is paragraph 34, that actually these systems are not uncommon, that jails and sheriffs often take on the duty to transmit appointment of counsel paperwork to managed assigned counsel programs. Mr. Taylor never rebuts that or says that that's not true as a matter of practice. Texas has 254 counties. State law is intended to be capacious as to how they get things done, while at the same time being very precise as to whether they get things done. It wants to ensure that no matter the county, appointment of counsel paperwork is transmitted and counsel is timely appointed, usually within 24 hours. And you're saying the duty, the responsibility for making sure they're transmitted doesn't lie with the magistrate? I'm not saying that the duty never lies with the magistrate. I'm saying that based on the operation of Operation Lone Star Magistration Center here, the Valverni Processing Center and Mr. Taylor specifically had a duty to transmit appointment of counsel paperwork. That they had that duty, that the duty followed the function of this facility, and that by failing to do it, they actually impaired the ability of the defense organization to assign counsel. Okay, I understand your argument that there is no qualified immunity in play. Let's assume for the moment, Arguendo, that it is in play. What is your best case that would show that he doesn't have qualified immunity here? Yes, Your Honor, and I was surprised that my friend on the other side cited Rothgary. I think Rothgary stands for the opposite proposition as what he says. The right to counsel attached at the magistration that happened at Mr. Taylor's facility, at the point where that right attached, Mr. Rivera needed to get a lawyer working. In addition to Rothgary, we don't argue reasonable time, although as a matter not of clear establishment, but of the merits of the Sixth Amendment claim, I think clearly 76 days is unreasonable based on the totality of the circumstances. But Coleman is an incredibly strong case for us. It applies to proceedings where a number of things can happen. The preliminary examination in Alabama was not required under state law. The information gleaned from it could not be introduced at trial, but it was about the advantages to the defense inherent in that proceeding. The defendant, with the advice of counsel, could discover the state's case against him, expose witnesses, create a record for impeachment, and make arguments for bail. All four of those principles are present in a 17151 hearing. Mr. Taylor never argues that a 17151 hearing, which requires release if the state isn't ready for trial, is not a critical stage. What he argues is, it's not critical because it didn't happen. But the reason it didn't happen is because Mr. Rivera had no ability to invoke it without counsel. Mr. Taylor cannot deprive Mr. Rivera of the counsel that he needs to invoke a critical stage and then use that as a basis to deprive his right to counsel. And then in addition to Rothgary and Coleman, Your Honor, I would argue that this court's case, Josh, provides more than fair warning to an individual in Mr. Taylor's position that he cannot simply withhold appointment of counsel paperwork because insofar as he would do so, he would deprive Mr. Rivera of his statutory right to release. I'd like to, unless the court has additional questions, address some additional points. Mr. Taylor argues that all that happened here was the silent passing of a statutory clock. From my client's perspective, that is absolutely not what happened. He was in a state prison hundreds of miles away from where he was arrested and suffering. And state law exists precisely to prevent this harm from happening. And nothing in state law or the Supreme Court precedent or Fifth Circuit precedent requires a sort of meeting of the adversary as defined narrowly by Mr. Taylor here. The operative test from Ash is meeting your adversary or coping with legal problems. The test, as I would define it, from Coleman is a moment that is significant to the defense at which the assistance of counsel is necessary. For Mr. Rivera, detained after 30 days, clearly he needed the assistance of counsel to cope with a legal problem. He was being detained past the time when the state should have released him if it was not ready for trial. In addition, Your Honor, several of the Supreme Court's cases foreclosed exactly that argument that you need to have an in-court proceeding. They are repetitive, that it applies to proceedings in court or out, formal or informal. The test is much more functional. Is this important to you as the criminal accused? Important being, does it affect the fairness of the trial or sentencing, or does it impact your liberty? And there are several cases that we could point to, in addition to the ones that we have discussed. Estelle v. Smith, I think, is very illuminating on this point. That's a Supreme Court case. In Estelle, an individual, Mr. Smith, a judge, ordered a competency interview by a physician. That wasn't the prosecutor asking for it. It wasn't a meeting with the adversary. And there was no argument that defense counsel needed to be at the interview itself. Instead, what was the critical stage and what was the deprivation of the right to counsel was that Mr. Smith didn't have the ability to consult with his attorney as to whether to invoke or participate in that interview whatsoever. That is identical to what Mr. Rivera suffered. He didn't even have counsel to tell him, this is a right that you have, this is an opportunity that you have. We also talked at length about this court's decision in Plaites. That was not a formal confrontation with one's adversary. The prosecution was not even involved. That was a probation officer submitting an addendum. There was no requirement that the defendant participate at all. And the framework that the court considered was, is there an opportunity to be heard? A 17151 proceeding is an opportunity to be heard. So ultimately, Your Honor, I think the right that Mr. Rivera had deprived was very clearly a right that he was entitled to. When he went through the Valverde Processing Center, he appeared before a magistrate, was informed of the charges against him, deemed indigent based on the paperwork that he signed at the Valverde Processing Center, and found entitled to appointment of counsel. The only thing the Valverde Processing Center needed to do was transmit appointment of counsel paperwork to the Lubbock Private Defender's Office. It failed to do so. And Mr. Taylor specifically failed to honor his obligation to do so or to build any system to ensure that his processing center would do it. Mr. Taylor invokes Wagenfeld. And I don't think that Wagenfeld applies to these circumstances at all. So first, there's a legal problem for Mr. Taylor. The Supreme Court has been very clear that these logistical problems are not a consideration in the appointment of counsel framework. We cite Argesinger in our brief. Rothgary itself talks about how the administrative difficulty of having to provide counsel to every individual who goes through a magistration in Texas would not be a basis to deprive that right. But in addition, Wagenfeld never held that the Sixth Amendment considers these kinds of exigencies. And most importantly, as a factual matter, there's nothing in the record to suggest that the transmission, the act of transmitting paperwork, was itself impaired by the volume of prosecutions under Operation Lone Star. Mr. Taylor talks about the difficulty to Kinney County, but he's not Kinney County in this circumstance. He is an individual at a processing center who has to send an email to the Lutter Private Defender's Office. And the record actually belies the notion that that was difficult at this time. Because when a phone call was made to his successor, appointment of counsel paperwork was transmitted in a matter of days. Wagenfeld involved a circumstance where an external emergency actually shuttered phone lines. There is nothing of the sort happening here. If the court has no further questions, I urge the court to affirm the judgment of the District Court. And I will emphasize that a remand... I'm sorry. Yes, to affirm the judgment of the District Court. We won below. And I'll emphasize that a remand does not commit this case to trial. It simply says that the factual record doesn't do what Mr. Taylor needs it to do, which is contradict all of the well-pleaded allegations in Plaintiff's complaint. Mr. Taylor says the duty was not his, but there are several documents that are not before the court. Mr. Taylor's own agreement with the Texas Department of Emergency Management, TDEM's agreements with the counties and with the Office of Court Administration. There is a lot that this court doesn't have access to, and the District Court correctly held that on a 12 v. 6, Mr. Taylor could not rebut the well-pleaded allegations in the complaint. This court should remand. This case should proceed to summary judgment. Thank you very much. All right. Thank you. We'll now hear the rebuttal. May it please the court, a few brief points on rebuttal. First, starting with the issue of whether or not there was a ministerial duty. Again, I would direct the court to Rivera-Castellan's complaint, in which there's no allegation there of a written agreement underlying managed assigned counsel program involving Taylor or his employer, the Division of Emergency Management. Now, my friend points to Articles 26.04 and 26.047 of the Texas Code of Criminal Procedure. There is not any language in those statutes that contemplates the ability to delegate or reassign some sort of statutory duty that the legislature has placed on a magistrate judge to someone in Taylor's position. Now, we can accept their allegation that there was a physical reality here, that Taylor was involved with the processing of folks at the Calvary Processing Center as alleged in the complaint. But those factual allegations about his involvement all involve his discretion. If you look at page 551 of the Record on Appeal, their theory in the complaint is that Taylor's role in developing the policies and customs of the Val Verde Processing Center were what led to the alleged deprivation of the right to counsel here. And so we think that gets Taylor into the Qualified Immunity Framework. Now, under that framework, I think my friend is due process principles with right to counsel principles. There is a right to have a certain proceeding under the due process framework. But under the Sixth Amendment framework, you're looking at the right to have counsel at a proceeding, not to the right to have a proceeding itself. And I think that's completely consistent with this court's case, Yonkers v. Choctaw County, in which you had overdetention at issue. You had proceedings that were not taking place. And this court explicitly said, this is a due process case. And that was the framework under which this court analyzed that problem. Now, finally, looking at some of the authority relied upon by my friend, you have fleets, for instance. And that case involved a mandatory restitution order, which was put in place during the sentencing and punishment phase after a criminal trial. Now, of course, it's undisputed that that would be a critical stage of the proceedings. That's very different from here, in which you're looking at just the first initial 30 days while someone was detained. So you're saying there's no critical stage as long as there's no actual proceeding. Is that what you're saying? Generally, yes, Your Honor. That seems to be a line that's drawn throughout the right to counsel cases. Now, when there is an actual proceeding takes place in which the accused needs representation, you have a right to counsel problem. And I think Coleman, which my friend points to, kind of demonstrates the difference between that case and what happened here. In Coleman, you had a hearing that took place in which the ultimate issue was whether there was going to be enough evidence to submit that case to a grand jury. There were witnesses on the stand. There was cross-examination taking place, things that, of course, require counsel. Now, there was a bail determination made as part of that hearing, but it ultimately is very different from here, in which you're just looking at a statutory, not even deadline, really just the beginning of an entitlement to seek reduced bail. So you're saying as long as you deny hearing, then you can deny counsel indefinitely? Not necessarily, Your Honor. I think if you were denying hearings that someone is entitled to, you have a due process problem. And it's worth pointing out that there is a due process claim still pending below against Kinney County. And so Rivera-Castellon has a recourse for being deprived of any sort of hearing that he thinks he was entitled to. It's just not a right to counsel problem. But if you don't have counsel to raise the issue about this hearing you're entitled to, sounds like a problem. Well, ultimately, it does make it more difficult, sure. It makes it more difficult. We recognize that, Your Honor, yes. As evidenced by this case, where he sat for a couple of months, and he got counsel, and he was out in five days. But ultimately, you're looking at what is reasonable. And that's what the Supreme Court said in Roth, Gary. And in that case, they declined to say whether six months would be unreasonable. Here, we're just talking about 76 days during a state-declared emergency, and what everyone recognizes was a border crisis. And so we think that should guide the analysis here, that ultimately there wasn't anything unreasonable. I thought when he got counsel, the counsel didn't immediately get him out. That's correct. And, Your Honor, I see I'm about to run out of time. I briefly answered. Yes. What happened was, once Rivera-Castellon was appointed counsel in December of 2021, his counsel allegedly failed to act for quite a few months after that. It was only when he finally got into the court that's when things got out, right? Correct. Yes, Your Honor. So we asked this court to reverse and render judgment, dismissing Ronnie Taylor from the case. Thank you. All right. Thank you. I appreciate both sides making arguments. And we are going to decide the case. And we will now turn to